UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:16-cv-23465-COOKE/TORRES

ROSE MILLER as PERSONAL
REPRESENTATIVE of THE ESTATE of
her daughter, TERRISHA GUYTON,
deceased, and as Assignee of JORGE
FELIX FELIPE and D&G FAMILY, LLC,

    Plaintiff,

v.

CARLOS LUIS RUIZ; BERNSTEIN & CHACKMAN,
P.A.; STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY; COPART OF
FLORIDA, INC.; and COPART OF
CONNECTICUT, INC.,

    Defendants.
_____/

## ORDER DENYING MOTION TO REMAND

This is a negligence action in which Plaintiff alleges Defendants mishandled an automobile that was important evidence in her deceased daughter's wrongful death case.

Defendants State Farm Mutual Automobile Insurance Company ("State Farm"), Carlos Luis Ruiz, Bernstein & Chackman, P.A. ("B&C Firm"), Copart of Florida, Inc. ("Copart of Florida"), and Copart of Connecticut, Inc. ("Copart of Connecticut") removed this case from state court based on diversity. (ECF No. 1). Pending is Plaintiff's Motion to Remand to State Court. (ECF No. 21). For the reasons that follow, I **DENY** the Motion.

## BACKGROUND

On April 27, 2012, non-party Jorge Felix Felipe caused an automobile accident while driving drunk that killed Plaintiff's daughter, Terrisha Guyton. (ECF No. 1-1 ¶ 12). Florida Highway Patrol officer Carlos Luis Ruiz investigated the accident. (*Id*. ¶ 13). After examining Guyton's damaged vehicle, Ruiz released it to Felipe's insurer, State Farm,

1

which in turn stored the vehicle at a salvage yard operated by Copart of Connecticut.[1] (*Id.* ¶ 13). The State of Florida eventually prosecuted Felipe for Guyton's death, and her estate brought a civil suit against Felipe. (*Id.* ¶¶ 14-15). Plaintiff alleges that at all times material to those proceedings, she thought the vehicle was lost or destroyed. (*Id.* ¶ 15).

Plaintiff allegedly learned of the vehicle's whereabouts for the first time on July 9, 2014 through a letter from State Farm's legal counsel, the B&C Firm. (*Id.* ¶ 17). In the letter, the B&C Firm informed Plaintiff that State Farm had the vehicle in storage at Copart of Connecticut's salvage yard. (*Id.*)

On June 29, 2016, Plaintiff filed the instant Complaint in Florida state court (ECF No. 1-1) ("Complaint") alleging that State Farm, together with the other Defendants acting as State Farm's agents and/or representatives, were aware of, denied knowledge of, and failed to disclose the vehicle's whereabouts to Plaintiff, thus hampering her ability to explore potential civil claims against defendants other than Felipe (such as the car manufacturer) and prejudicing her case against Felipe himself.[2] (*Id.* ¶¶ 14-21).

Specifically, Plaintiff claims: (1) negligent destruction of evidence against State Farm; (2) reckless and/or intentional destruction of evidence against State Farm; (3) claim of bad faith against State Farm; (4) negligent destruction of evidence against Copart of Florida; (5) negligent destruction of evidence against Copart of Connecticut; (6) reckless and/or intentional destruction of evidence against B&C Firm; (7) negligent destruction of evidence against the B&C Firm; (8) legal malpractice against the B&C Firm; and (9) gross negligence/willful and wanton misconduct against Ruiz, in his personal capacity. (*Id.* ¶¶ 28-119).

---

[1] Plaintiff alleges that Copart of Florida, Inc. operated the salvage yard, while Defendants allege Copart of Connecticut, Inc. operated the yard. *Compare* ECF No. 1-1 ¶ 11 *with* ECF 1 ¶ 7. Both entities are subsidiaries of Copart, Inc., a foreign corporation. I discuss the operation and ownership of the salvage yard *infra*.

[2] Despite not knowing the whereabouts of the vehicle, Plaintiff settled with Felipe on the eve of trial, collecting $5,000,000 and assuming all of his rights against State Farm. (*Id.* ¶ 122).

State Farm removed the action to federal court under 28 U.S.C. §§ 1332, 1441. (ECF No. 1). Plaintiff now seeks remand to state court, arguing that the parties are non-diverse.[3] (ECF No. 21). State Farm counters that Plaintiff fraudulently joined Copart of Florida, the B&C Firm, and Ruiz, all Florida citizens, to destroy diversity, and that the Court should therefore disregard those defendants when determining its subject matter jurisdiction. (ECF No. 1 ¶ 4).

## LEGAL STANDARD

Federal district courts have original jurisdiction over, *inter alia*, actions where the matter in controversy exceeds $75,000, exclusive of interest and costs,[4] and no plaintiff is a citizen of the same state as any defendant. 28 U.S.C. § 1332(a); *Shannon v. Albertelli Firm, P.C.*, 610 F. App'x 866, 870 (11th Cir. 2015). Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant. *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).

If a plaintiff files an action in state court over which a federal court has original jurisdiction, a defendant may remove the action to federal court on diversity grounds, provided that none of the defendants is a citizen of the state in which the plaintiff filed the action. 28 U.S.C. § 1441; *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The burden of establishing the court's jurisdiction lies with the removing party. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

If a plaintiff names a non-diverse defendant solely to defeat federal diversity jurisdiction, the plaintiff has effectuated a "fraudulent joinder." *Henderson*, 454 F.3d at 1281. In such cases, the district court must involuntarily dismiss the non-diverse defendant and deny any motion to remand the matter back to state court. *Id.*; *see Insinga v. La Bella*, 845 F.2d 249, 254 (11th Cir. 1988). To prove fraudulent joinder, a defendant must demonstrate by clear and convincing evidence either that: (1) there is no possibility that the plaintiff can

---

[3] The parties' citizenships are as follows: Plaintiff is a citizen of Florida. (ECF No. 1-1 ¶ 4). Defendants State Farm and Copart of Connecticut are foreign corporations. (*Id.* ¶¶ 5, 7). Defendants the B&C Firm, Ruiz, and Copart of Florida are citizens of Florida. (*Id.* ¶¶ 6, 8-9).

[4] Plaintiff here seeks to recover $5,000,000. (ECF No. 1-1 ¶ 36).

establish a cause of action against the newly-joined, non-diverse defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the newly-joined, non-diverse defendant into state court. *Henderson*, 454 F.3d at 1281; *see Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962).

## ANALYSIS

As Defendants do not allege that Plaintiff has fraudulently pled jurisdictional facts, my inquiry is limited to determining whether there is a possibility that Plaintiff can establish a cause of action against any of the Florida Defendants: Copart of Florida, the B&C Firm and Ruiz. *See Henderson*, 454 F.3d at 1281. I address each defendant in turn.

I. Copart of Florida

Plaintiff asserts that Copart of Florida negligently destroyed evidence by storing Guyton's vehicle in Copart of Connecticut's salvage yard. She claims that Copart of Florida and Copart of Connecticut "operated as one collective corporate actor." (ECF No. 1-1 ¶ 54). Plaintiff also argues Copart of Florida was acting as State Farm's contractual agent and/or bailee with respect to the vehicle. (*Id.* ¶ 53). Both contentions lack merit.

As a threshold matter, there is clear evidence showing that Copart of Florida and Copart of Connecticut are distinct corporate entities separated by a two-layer corporate veil. Plaintiff herself admits as much. (ECF No. 1-1 ¶ 54). Indeed, as the Litigation Manager for Copart Inc., parent company of both Copart of Florida and Copart of Connecticut, testified, "Copart of Florida, Inc. is not engaged in the business of salvaging or selling salvaged vehicles. It did not own or operate the facility at which the [v]ehicle has been located during the time material to the complaint allegations. It had no contact or responsibility for the [v]ehicle, and took no part in the receipt or processing of the [v]ehicle or its continued presence at the [salvage yard]." (ECF No. 1, Ex. 13 ¶ 6). Thus, there is simply no basis for merging such separate and distinct corporate identities.

The mere fact that Copart of Florida and Copart of Connecticut share a parent does not change that conclusion. *See Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000). In *Sherritt*, the Eleventh Circuit held that "[i]t is well established that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Id.* That logic applies even more

4

forcefully where, as here, plaintiff seeks to attribute the Florida presence of one company to an out-of-state company solely because they have the same parent.

Therefore, Copart of Florida is a separate entity from Copart of Connecticut and they did not operate "as one collective actor."

Plaintiff also alleges that Copart of Florida was acting as State Farm's contractual agent/bailee as a third-party spoliator. (ECF No. 21 at 14). To bring a spoliation claim, a plaintiff must prove the following elements: (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) *destruction of that evidence*; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003) (emphasis added).

Even if I view the facts in the light most favorable to Plaintiff and accept that Copart of Florida was contractually bound to preserve evidence, the cause of action ultimately fails because the evidence was not destroyed but merely concealed. *Green Leaf Nursery*, 341 F.3d at 1308 (holding that concealment does not equal destruction of evidence). "[S]poliation is defined as the 'destruction' of evidence or the 'significant and meaningful alteration of a document or instrument.' Concealment does not constitute spoliation because such conduct is covered by the litigation privilege." *Fla. Evergeen Foliage v. E.I. DuPont de Nemours & Co.*, 470 F.3d 1036, 1043 (11th Cir. 2006); *see also Green Leaf Nursery*, 341 F.3d at 1308.

Here, Defendants did not "destroy" Guyton's vehicle – any damage happened during the accident. (ECF No. 1-1 ¶ 5, n.2). Instead, Plaintiff alleges that State Farm possessed the vehicle's remnants, stored them in the salvage yard, and concealed their location from Plaintiff, thereby prejudicing her civil case against Felipe. (ECF No. 1-1 ¶¶ 13, 16). Without citing any supporting authority, Plaintiff asserts this amounted to destruction of evidence as it "in a sense" destroyed the evidentiary value of the vehicle. (ECF No. 21 at 15-16). But "in a sense" is not the applicable standard, actual physical destruction is.

In light of the above, Plaintiff has no claim against Copart of Florida.

II.     The B&C Firm

Plaintiff sets forth three causes of action against the B&C Firm that form the basis for its joinder. In particular, Plaintiff alleges 1) reckless and/or intentional destruction of evidence; 2) negligent destruction of evidence; and 3) legal malpractice.

The first and second causes of action fail for the same reasons that the spoliation claim against Copart of Florida failed: mere concealment does not amount to destruction of evidence. *Fla. Evergeen Foliage*, 470 F.3d at 1043; *see also Green Leaf Nursery*, 341 F.3d at 1308.

As for the legal malpractice claim, Plaintiff argues the B&C Firm had a duty to preserve Guyton's vehicle by virtue of the "special circumstances" doctrine. (ECF No. 1-1 ¶ 103). The "special circumstances" doctrine provides: "if one knows that he, she, or it is about to become involved in a civil action, this alone should be sufficient special circumstances to impose a duty of care to preserve such evidence in such potential party's possession that a reasonable person would foresee is material to that action." *Torres v. Matsushita Electric Corporation*, 762 So. 2d 1014, 1019 (Fla. Ct. App. 2000) (Cobb, J., concurring).

Courts have construed the "special circumstances" doctrine narrowly because it imposes an unreasonably broad duty upon hypothetical litigants as "[i]t is essentially impossible for everyone (even an insurance company) to hold onto every piece of potential evidence just because there is a possibility that litigation may arise sometime in the future." *See, e.g.*, *Assimack v. J.C. Penny Corp.*, 2005 WL 2219422, *1 9 (M.D. Fla.). I agree with that approach, and decline to deviate from it here to find that the B&C Firm had a duty to preserve Guyton's vehicle.

Plaintiff also asserts that the B&C Firm owed duties to Felipe the rights to which he assigned to Plaintiff. (ECF No. ¶ 98). Generally, a plaintiff only can bring a legal malpractice claim against an attorney with whom the plaintiff shares privity of contract. *Littell v. Law Firm of Trinkle*, 345 F. App'x 415, 418 (11th Cir. 2009) (citing *Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner*, 612 So. 2d 1378, 1379 (Fla. 1993)). Florida law recognizes a narrow exception to the privity requirement, but it does not apply here. *Id.* (certain situations arising in trusts and will drafting). The B&C Firm was retained to represent State Farm, not Felipe or Plaintiff. Plaintiff therefore cannot sue the B&C Firm for legal malpractice.

6

In light of the above, Plaintiff has no claim against the B&C Firm.

III. <u>Ruiz</u>

Finally, Plaintiff asserts a gross negligence/willful and wanton misconduct claim against Ruiz. Plaintiff purports to sue Ruiz in his personal capacity, as he is no longer employed as a Florida Highway Patrol officer. That means, according to Plaintiff, Ruiz does not enjoy qualified immunity under Fla. Stat. § 768.28. In the alternative, Plaintiff alleges that Ruiz's actions amounted to willful and wanton misconduct, which, if true, also would deprive him of qualified immunity under § 768.28.

Under Florida law, state actors including officers, employees, or agents of the state or of any of its subdivisions enjoy qualified statutory immunity in that they shall not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of their employment or function. Fla. Stat. § 768.28(9). However, this immunity is not absolute; it may be overcome if the state actors act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *Id.*

Regarding Plaintiff's first argument, Ruiz enjoys qualified immunity because he was acting within the scope of his employment as a law enforcement officer at the time the events occurred. *See Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004) ("[T]o receive qualified immunity, the public actor must prove that he was acting within the scope of his discretionary authority *when the allegedly wrongful acts occurred*." (emphasis added)). He was responsible, as the investigating officer, for obtaining and maintaining all evidence potentially relevant to the accident. (ECF No. 1-1 ¶ 110). It was within the scope of his employment to permit Guyton's vehicle to be taken to the salvage yard, (*Id.* at ¶ 113). Accordingly, Ruiz enjoys the presumption of qualified immunity under § 768.28.

As for Plaintiff's second argument, she has not plausibly alleged bad faith, malicious purpose, or wanton and willful disregard of human rights, safety, or property that would deprive Ruiz of the immunity. § 768.28(9). Florida courts equate bad faith with the actual malice standard. *Gurrera v. Palm Beach Cnty. Sheriff's Office*, No. 15-13581, 2016 U.S. App. LEXIS 13886, at *14 (11th Cir. Aug. 1, 2016). To show actual malice, a plaintiff must present evidence that an officer acted with a deliberate intention to do a wrongful act. *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). To overcome the statutory immunity,

7

the conduct must be much more reprehensible and unacceptable than mere intentional conduct. *O'Boyle v. Thrasher*, 638 F. App'x 873, 879 (11th Cir. 2016) (quoting *Richardson v. Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. Dist. Ct. App. 1987)).

Having reviewed the record, I do not find any evidence suggesting bad faith, malice, wantonness, or willful disregard by Ruiz. Plaintiff presented five instances that allegedly show Ruiz's wrongdoing: (1) he permitted the vehicle to be taken to the Copart salvage yard; (2) he failed to order the vehicle to be impounded in police custody; (3) he failed to follow-up with the statues of the vehicle; (4) he violated Florida Highway Patrol procedures for preservation of evidence; and (5) he failed to inform lawyers in the criminal case about the status of the vehicle. (ECF No. 1-1 ¶ 113). Even if I assume that Ruiz acted intentionally, none of the pled facts suggest reprehensible or unacceptable conduct with the intention to do Plaintiff wrong.

In addition, in light of relevant case law, Ruiz's conduct is not so egregious as to amount to bad faith, malice, or wanton and willful disregard standard. *Compare Gurrera*, 2016 U.S. App. LEXIS 13886, at *14 (allegations of fabricated evidence and concealed exculpatory evidence insufficient to overcome immunity under § 768.28(9)), *with Lloyd v. Hines*, 474 So.2d 376, 379 (Fla. Dist. Ct. App. 1985) (use of fraudulent and corrupt means to obtain warrant sufficient to overcome immunity under § 768.28(9)).

In short, Ruiz has qualified immunity under § 768.28(9).

## CONCLUSION

In light of the above, I find that Plaintiff's joinder of Defendants Carlos Luis Ruiz, Bernstein & Chackman, P.A., and Copart of Florida, Inc. was fraudulent, and intended solely to destroy diversity and preclude removal to federal court.

Accordingly, it is **ORDERED and ADJUDGED** that Plaintiff's Motion to Remand to State Court (ECF No. 21) be, and the same hereby is, **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 9th day of November 2016.

_/s/ Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*